# Payment of Private Counsel Fees Under the Department of Justice Representation Program

Whether fee statements submitted to the government by private counsel retained to represent a government employee may be disclosed to the public without violating applicable ethical standards depends upon the facts of each case.

The government's practice of paying some fees and expenses charged by private counsel but not paying others does not present a substantial ethical question, as long as the practice is clearly understood by the employee-clients and their private attorneys.

February 7, 1980

## MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, CIVIL DIVISION

When a government employee is sued personally for something he did or omitted to do in the course of his employment, he can usually turn to the Civil Division for help. The Civil Division will assign one of its own attorneys to defend him, or in some circumstances it may recommend that he retain private counsel at government expense.[1] The conditions under which private counsel may be retained are set forth generally in the so-called "Representation Guidelines." See 28 C.F.R. §§ 50.15, 50.16. In the usual case, the precise terms and conditions of any fee agreement between private counsel and the Government are described in a written contract signed by the Assistant Attorney General and the participating firm.

As a matter of billing practice, the Civil Division requires all private attorneys participating in the representation program to submit monthly fee statements to the Civil Division that describe in detail the services for which they seek compensation. The attorneys have complied with this requirement in the way that attorneys usually comply with the demands of an impecunious client who questions a fee: they have furnished the Civil Division with actual time records or other relatively raw and explicit descriptions of how they spent their time.

---

[1] In a series of recent opinions rendered at the request of the Civil Division, this Office has discussed the legal basis for the practice of using government attorneys and private attorneys to provide government employees with free legal representation to protect their personal interests in civil litigation. Given the perplexing questions that have been generated by those opinions and the practices they authorize, we express no view, for purposes of this opinion, on the question whether these practices ought to be modified.

388

Because of the large amount of money that is being paid out in fees under the representation program, the Civil Division has determined that the public has a legitimate interest in knowing how this money is being spent. Accordingly, the Civil Division has made available to the public much of the relevant information. It has disclosed: (1) the identity of each law firm participating in the program; (2) the aggregate amount paid annually to each law firm under the program; and (3) the basic terms of the standard fee arrangement, including the agreed hourly rate. Moreover, despite the objection of some of the participating firms, the Civil Division has given some thought to the possibility of releasing additional information, including the detailed records and descriptions of the services rendered by the participating firms. You have requested our views regarding the ethical aspects of such an undertaking. Is there anything in the Code of Professional Responsibility that would prevent the Civil Division from disclosing information of that sort? [2]

You have asked a second question that involves a related problem. On occasion, the Civil Division declines to pay for some of the services for which firms seek compensation. For example, it will usually decline to pay for services rendered in connection with a counterclaim or ancillary "affirmative" litigation. It may also decline to pay certain extraneous expenses (e.g., "entertainment" expenses). As a matter of policy, the Civil Division has never refused to pay for services rendered in connection with the development of an actual defense that was asserted in litigation, even though the defense may appear in retrospect to have been a waste of time and therefore not "reasonably necessitated by the defense" within the meaning of the fee agreement. But because the decision concerning payment *vel non* may carry some potential for influencing the attorneys in the conduct of their representation, and because the Canons generally require attorneys to exercise independent professional judgment on behalf of their clients without regard to eco-

---

[2] Your question assumes that this Department has discretion to withhold this information under the Freedom of Information Act (FOIA). We express no view on that question, except to say in passing that there is probably a rough congruence between the relevant ethical concerns and the relevant FOIA considerations. If there is a solid ethical reason for delaying or denying disclosure in a particular case, an exemption from mandatory disclosure may be available under FOIA.

Likewise, your question assumes that there is no statutory bar to disclosure and that the Civil Division is legally free to disclose this information if it can do so ethically. Because this information relates to financial matters and in some instances may reveal methods of professional operation not ordinarily made public in the course of the attorney-client relationship, some consideration ought to be given to the applicability in this context of 18 U.S.C. § 1905, which bars public disclosure of certain kinds of confidential business information that comes into the hands of government officers by virtue of reports and other submissions from the private sector. The recent decision in *Chrysler* v. *Brown*, 441 U.S. 281 (1979), is obviously relevant here, as will be the position taken by the Government regarding the scope and applicability of § 1905 on the remand in that case. There is very little legislative history relevant to § 1905. We express no firm view regarding its applicability in this context. We should say, however, that in our opinion there is a substantial question whether Congress intended this statute to subject government officers to criminal liability for disclosing to the public the amount of public money expended under government contracts or the nature of the services provided the Government in return.

nomic or other pressures exerted by third parties, you have asked whether this practice of paying some fees and expenses and not paying others, presents any ethical difficulty.

Our views on both questions are set forth below.

## I. The Ethics of Disclosure

The attorneys themselves have suggested that public disclosure of the detailed billing information may violate Canon 4 of the Code. Canon 4 requires all attorneys to preserve the "confidences" and "secrets" of their clients. The attorneys have argued that the fee statements submitted to the Civil Division under the representation program do indeed contain the "confidences" and "secrets" of the employee-defendants and that these "confidences" and "secrets" must be preserved.

We have three observations to make on this point:

First, to the extent, if any, that these billing materials do contain "confidences" or "secrets" within the scope of Canon 4, we think this Department should preserve those confidences or secrets and should not disclose them publicly without the consent of the employees. We recognize that these employees are not the "clients" of this Department. We cannot say that public disclosure of their confidences or secrets by the Civil Division would violate the letter of the relevant disciplinary rules. But we think that disclosure would be inconsistent with the spirit of Canon 4 and with the purposes of the representation program itself. The whole purpose of that program is to provide government employees with legal representation, and one of the essential characteristics of legal representation is that it protects the client's interests by preserving his confidences and secrets. If the Civil Division were representing these people directly, Canon 4 would prevent it from disclosing their confidences or secrets.[3] It seems to us that the practice should be the same when the Civil Division chooses to provide representation indirectly. In both cases the purpose of the exercise is to protect interests of government employees, not to expose their confidences and secrets to the public.[4]

---

[3] The general question whether a government lawyer is ever permitted or required by law or the ethics of his profession to disclose embarrassing, detrimental, or incriminating information concerning fellow employees who come for legal advice or professional help is a complex one. There are many different circumstances in which the issue can arise, and the answer can differ from case to case. We think it clear, however, that when an attorney from the Civil Division is assigned to appear as the attorney of record for a government employee who has been sued personally in a civil case, the attorney's duty under the Code (and therefore under departmental regulations) is to preserve the confidences and secrets of the client. See, e.g., Opinion 73-1 of the Professional Ethics Committee, Federal Bar Association, 32 Fed. B. J. 71 (1973); ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1413 (1978). That has been the traditional view of this Office.

[4] The basic justification for any discretionary disclosure of the billing information, including disclosure of any actual confidences or secrets, is that disclosure will enable the public to monitor the expenditure of government resources. But government resources are expended when Civil Division attorneys provide representation directly. The only economic difference between direct representation and indirect representation is the difference between paying a salary and paying a fee. It is difficult to see how that difference can permit the preservation of secrets in the one case and require disclosure in the other.

390

Second, Canon 4 is designed to protect clients, not attorneys. If a client has no objection to a disclosure of billing information, his attorney has no reason to resist disclosure insofar as Canon 4 is concerned. Therein lies a possible solution to your problem. Most of these employees will ultimately have no interest whatever in preserving the confidentiality of the great bulk of the billing information in question here. If they are requested at the proper time to review these documents with an eye to identifying those parts, if any, that record the substance of confidential attorney-client communications or secret matters that would be embarrassing or damaging to their interests if disclosed, they may well be in a position to approve the disclosure of all the rest. We are not suggesting that they be asked to "waive" their right to protect embarrassing confidences or secrets, only that they be asked to review the relevant materials and separate the wheat from the chaff.[5]

The ultimate substantive question, of course, is whether these documents do in fact contain "confidences" or "secrets" falling within the scope of Canon 4. Our reluctant conclusion is that this question cannot be answered categorically. It must be answered on a case-by-case basis after an examination of each document in light of all the facts of each case. We realize that this conclusion is an awkward one from an administrative standpoint, but we see no way around it. We will elaborate briefly.

Canon 4 protects two categories of information against nonconsensual disclosure: (1) information within the scope of the evidentiary privilege for confidential communications between attorney and client (as defined by local law); and (2) a broader category of "secret" information gained by an attorney from whatever source "in the professional relationship," the disclosure of which would be detrimental to, or contrary to the wishes of, the client. Information relevant to the nature and scope of professional services rendered by an attorney for a client does *not* invariably fall into either of these categories; and in our view there are many circumstances in which it may be disclosed for any proper purpose without raising ethical questions. This is frequently true with respect to services of the kind that are of concern to the Civil Division here, i.e., services rendered by attorneys of record in actual litigation. The point is a simple one. During litigation a great deal of information about the client's affairs, the scope of the attorney's employment, and the services rendered by him in the course of the case is disclosed publicly as a matter of course; and much of the undisclosed detail can be revealed, at least by the end of the case, without betraying the substance of any privileged communication and without disclosing

---

[5] Whether at this late date their willingness to undertake such a review in good faith could be made a precondition to final reimbursement of their attorneys is a question that depends entirely on an interpretation of the contracts between the attorneys and the Civil Division. We express no firm view on that question. With respect to future contracts, it may well be that some thought should be given to establishing explicitly, by contract, a review procedure of this kind.

any other "secret" that carries real potential for embarrassment to the client.

Consider the following example: An attorney is retained to defend a tort case. He spends one hour interviewing the client, one hour preparing and filing an answer to the complaint, two hours researching the applicability of the relevant statute of limitations, 30 minutes preparing a motion for summary judgment, six hours sitting in the courthouse, and 15 minutes arguing and winning the motion. It is possible that all of that information can be disclosed publicly at the end of the case without betraying any privileged communication,[6] and because so much of the relevant information is publicly available anyway, it is extremely unlikely that any other "secrets" relevant to the nature and scope of the services performed would be embarrassing or harmful to the client if disclosed. When the world already knows that the attorney filed a motion for summary judgment on the client's behalf, it does not hurt or embarrass the client for the world to learn that the attorney spent 30 minutes preparing that motion.

On the other hand, it is clear that information protected by Canon 4 can find its way into billing records. The classic example is the diary entry that records the substance of a confidential communication: "Ten-minute conference with client concerning possible divorce " More frequently, a billing record may contain a description of actions taken by the attorney on the client's behalf that should remain "secret" if the client's interests are to be served. For example, if a defense attorney records in his diary that he has just spent two hours researching and

---

[6] The attorney-client privilege protects the confidentiality of information obtained by the attorney from confidential communications with his client. Generally speaking, it does not protect information obtained from other sources. Information about the nature of the services rendered by an attorney for a client is generated by the attorney himself. He does not obtain it from his client, and he can often disclose it without betraying the substance of anything his client told him. That is the reason for the traditional view that an attorney can "usually" or "ordinarily" disclose the nature of the services he performs for his client (e.g., 5 hours deposing plaintiff, 20 hours preparing for trial) without disclosing anything protected by the privilege. See, e.g., Behrens v. Hironimus, 170 F.2d 627, 628 (4th Cir. 1948); 2 Louisell & Mueller, Federal Evidence 540-41 (1978).

Moreover, the fact that the attorney may at some later date communicate information concerning the nature of his services to his client (in a bill, for example) does not make the information itself privileged. The modern view is that the privilege extends to confidential communications from attorney to client, just as it extends to confidential communications from client to attorney; but the privilege protects the confidentiality of communications, not facts themselves. If an attorney believes that the sky is blue and advises his client to that effect, the privilege prevents him from betraying his advice, but it does not prevent him from giving the same advice—communicating the same fact—to the world at large. If the fact in the mind of the attorney is accessible to examination and disclosure before its communication to the client, it remains accessible afterwards, though of course there can be no demand for disclosure of the communication itself. See 2 Louisell & Mueller, Federal Evidence 540 (1978).

The traditional interpretation of the ethical duty of an attorney to preserve the confidences of his client was tied to this concept of privilege. Thus it was thought that an attorney could ethically disclose the nature of services rendered for a client, since that information is not acquired by the attorney from a confidential communication with the client and may be otherwise accessible to examination and disclosure without betraying anything that passed between attorney and client. ABA Comm. on Professional Ethics and Grievances, Formal Op. 154 (1936). This view of the ethical obligation does not, of course, take into account the expanded scope of the disciplinary rules, which protect, not only confidential communications, but "secrets" obtained from any source in the professional relationship.

preparing a motion to dismiss the complaint for insufficiency of process, that information should not be disclosed to the other side prior to the filing of the motion, since premature disclosure would deprive the client of a legitimate tactical advantage in the litigation. We think it would be not only unprofessional but also unethical for an attorney to make a premature disclosure of that sort, absent some adequate justification. The disclosure would trench on Canon 4 and on Canons 6 and 7 as well.[7]

We can summarize our views on the question of disclosure in the following way. It is unlikely that very much of this billing information discloses the substance of privileged communications or any other "secrets" that would be embarrassing or detrimental to any of these employees if disclosed, but the ethical and policy questions that would be presented by a disclosure of any given document cannot be answered without examining that document and determining whether in fact it contains confidential or secret matter protected by the Canon. The administrative difficulty of attempting to make that sort of determination in each case is obvious, and it is compounded by the fact that the determination probably cannot be made prudently without consultation with the attorney and the employee whose interests are at stake. There is no litmus test. The significance of a billing document to a client depends on what the client's interests are and on all the other facts and circumstances of the case. The unfortunate truth is that he and his attorney are the ones who understand those interests and those facts best.

This brings us to the suggestion that we have already made. At the end of each of these cases the Civil Division will be in a position to submit all the relevant billing records to the employee-client and to request that he determine whether, in the light of: (1) the disposition of the case; and (2) any liabilities or embarrassments that may yet be his, the records reveal anything that would be detrimental to his interests if disclosed. The objectionable parts can be redacted. The rest can be disclosed without provoking ethical concerns.[8]

---

[7] Loss of advantage in the litigation in which services are rendered is not of course the only sort of harm that can result from untimely disclosure of professional services. For example, if a corporate client is subject to regulation by an agency before which an attorney practices, the very fact that the attorney has been retained by the client and has performed services for the client could, if known to the agency, direct the agency's attention to the client's affairs, causing expense and inconvenience; and there may be circumstances in which the attorney could not ethically disclose information of that sort without adequate justification. See Opinion No. 58, Committee on Legal Ethics, District of Columbia Bar.

[8] In registering their objection to disclosure of these materials, the attorneys have made at least three arguments not discussed in the preceding paragraphs. None of these arguments alters our view of the ethical question or affects our advice to you.

(1) Some of the attorneys have argued that these billing materials, being inter-attorney communications relevant to litigation in which the United States has an interest, are within the traditional rule that extends the attorney-client privilege to communications between two or more attorneys who confer to promote the common interests of their clients. That argument does not wash. Even if one were willing to assume that these attorneys are somehow representing their clients (not themselves)

Continued

## II. Paying Some Fees and Expenses but Not Others

We think that the practice of paying some fees and expenses but not others presents no substantial ethical question. We are assuming of course that in all of these cases the clients as well as their attorneys, after full disclosure of the Department's potentially conflicting interest, were made to understand what is stated explicitly in the fee contract itself: (1) that the clients and their attorneys are entirely free to determine what sort of legal services ought to be performed on the client's behalf; (2) that this Department will pay for some of those services, but it may not pay for others; and (3) that if a client wants his attorney to render legal services for which the Department will not pay, he and his attorney must reach their own understanding regarding the fee, if any, that the attorney will charge. As long as all of these points are understood by the parties in interest, the fee arrangement is not unethical, in our view.

A close analogy to this sort of arrangement can be found in the private sector. It is quite common for liability insurance carriers to agree to pay for legal services reasonably necessitated by the defense of claims against their policyholders, even though the interest of the carrier and the interests of the policyholder are rarely identical. Moreover, it is usually made quite clear that the carrier will pay for some kinds of services, but not others (e.g., the carrier usually will not pay for services rendered in connection with a counterclaim). For both of

when they submit these billing materials to the Civil Division, one would be hard put to conclude that these communications are for the purpose of promoting any "common interest" as between their clients and the United States within the meaning of the rule. It may be true that the United States has a general interest in providing legal representation for its employees, just as it has an interest in paying their salaries and in doing other things that encourage people to enter government service. But a demand for payment of a fee (whether made directly or through an attorney) is a classic "adversarial" demand. It does no more to promote a "common interest" as between the Government and a government employee than would, say, a demand for back salary. That it may be communicated to attorneys in the Civil Division while other attorneys in the Civil Division are representing the United States in the litigation out of which the demand arises is simply a commentary on the peculiar way the Government is forced to do business in these cases. That fact does not, in our view, enhance (or diminish) the privileged status of what these materials contain.

(2) Some of the attorneys have argued that these materials are "attorney work product." There is authority that information contained in law firm statements may indeed, in proper circumstances, be regarded as "attorney work product" and therefore privileged, at least for FOIA purposes. *See Indian Law Resource Center* v. *Department of Interior,* 477 F. Supp. 144 (D.D.C. 1979). But our view of the present case is that "work-product" status of these billing materials (if any) has no direct bearing on the ethical question of discretionary disclosure. Whether or not this information was generated "in anticipation of litigation or for trial," whether or not it reflects the "mental impressions," etc. of these attorneys, the ethical question is simply whether it discloses the confidences or secrets of the clients within the meaning of the Canon. That question turns upon the considerations discussed above. It does not turn upon Rule 26 of the Federal Rules of Civil Procedure.

(3) Finally, some of the attorneys have argued that discretionary disclosure of these materials is prohibited by the Privacy Act. We have conferred with the Office of Information Law and Policy (OILP) on this question. They have expressed doubt that these records, which are filed and retrieved by the name of the law firm that submitted them, constitute a "system of records" within the meaning of the Act. *See* 5 U.S.C. § 552a(a)(5). Moreover, believing that there may be only a very slender basis for claiming a FOIA exemption for disclosure of properly redacted billing materials at the end of each case, OILP is inclined to the view that the Privacy Act is probably irrelevant anyway. It does not, of course, forbid any disclosure that is mandated by FOIA. *See* 5 U.S.C. § 552a(b)(2).

these reasons, the tripartite fee arrangement harbors some potential for abuse, and it does in fact give rise to unethical conduct from time to time. But the traditional view has been that such an arrangement is not unethical in itself and that abuse can be avoided by firmly maintaining the principles that: (1) the attorney has the responsibility for acting solely in the interests of his client, notwithstanding the interests of the company that pays his fee, *see* EC 5-23; and (2) the client must be free, and must be made to understand that he is free, to make other arrangements, either with that attorney or with other attorneys, if it appears that services in addition to those paid by the company are necessary or desirable from his standpoint. *Cf.* DR 5-105(C).

We do have one suggestion regarding a technical point. The standard contract that the Civil Division uses in the representation program is bilateral in form. It is a contract through which the Department of Justice "retains" a private attorney to represent a government employee. It seems to us it would be helpful, both from the standpoint of the disclosure problem and from the standpoint of preserving the independence of private counsel, if this contract could be recast. Unless there is some reason to exclude the employee,[9] he ought to be made a party; and the contract could then provide: (1) that he, the employee, has asked a private attorney to represent him, inasmuch as the Department, for professional reasons, cannot; (2) that he and his attorney will determine what sort of legal services need to be performed on his behalf; (3) that he and his attorney have entered into a collateral agreement with this Department regarding payment of some, but perhaps not all, of the fees generated during the course of this representation; (4) that if the employee and his attorney feel that services are desirable for which the Department will not pay, they must make their own arrangement regarding the fee; and (5) that he has entered into an agreement with this Department regarding the handling of his confidences and secrets and the disclosure of billing information submitted to this Department by his attorney. Much of this is in the agreement already, but it seems to us that if the employee were inserted formally, it would be relatively easy to spell out the precise nature of the rights and obligations of all three parties and to deal directly with the sorts of questions that have prompted your ethical concerns.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[9] We have reviewed past Office of Legal Counsel opinions on the question of the authority of the Department to contract with private attorneys to provide legal representation for government employees. We are unaware of any legal consideration that requires the exclusion of the employee.